UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHAEL STAR,<br>*Petitioner*,<br><br>v.<br><br>DESHA HALL WINSTEAD,<br>*Respondent.* | 1:23-cv-1641-MSN-JFA |

MEMORANDUM OPINION

Michael Star ("Petitioner" or "Star"), a former Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his September 27, 2022 conviction and sentence for filing a false police report in the Circuit Court of the City of Alexandria, Virginia. (ECF 1). The matter is before the Court on the Respondent's March 27, 2024, Amended Motion to Dismiss, with a supporting brief. (ECF 10, ECF 11). Respondent has filed the relevant state court criminal, habeas, and appellate records, and Petitioner was advised of his right to respond to the motion to dismiss pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), ECF 11, but has not responded. Accordingly, this matter is ripe for disposition. For the reasons that follow, the Court will grant Respondent's Motion to Dismiss.

**I.    Background**

On October 20, 2021, Petitioner was convicted of the misdemeanor offense of making a false police report in violation of Virginia Code § 18.2–461 by the General District Court of the City of Alexandria and he was sentenced to twelve months in jail. He appealed his conviction to the Circuit Court of the City of Alexandria for trial *de novo*. At his bench trial on June 10, 2022, Petitioner was again convicted and sentenced to twelve months in jail, with all but ninety days

suspended, and he was placed on supervision for six months following service of sentence.[1] Petitioner was placed upon "good behavior," for a period of one year from his release from custody. (CCT at 846–47).

Petitioner appealed to the Court of Appeals of Virginia, arguing that the evidence was insufficient to support his conviction and that a condition imposed at sentencing (requiring he obtain leave of court to file further civil suits in Alexandria) was an abuse of discretion. The court affirmed the conviction on September 19, 2023, and summarized the evidence as follows:

> In 2020, Charisse Hines was an attorney who practiced with her own firm in Alexandria. Hines's law firm used the "DocuSign" system for retainer agreements when accepting new clients. DocuSign "allow[ed] clients to electronically sign agreements without having to be physically present" in Hines's office. Typically, Hines's assistant drafted the firm's engagement letter and fee arrangement for new clients, which Hines would review and approve. Then, Hines's assistant uploaded the document in PDF format into the DocuSign system and emailed the document to the new client for electronic signature.
>
> In July 2020, Star sought Hines's assistance in collecting the debts on some civil judgments he had obtained against three individuals. Star communicated with Hines and her assistant through email about legal representation. Hines's office generated a document entitled "Engagement Letter and Fee Arrangement" dated July 10, 2020, and addressed to Star. The terms of the agreement provided for Star to pay Hines's firm a retainer of $1,200 and, thereafter, a rate of $300 per hour for legal services. The document instructed Star to sign the letter and email it to Hines's law firm if he agreed with the terms. Hines's firm received a copy of the agreement, with a DocuSign signature above Star's printed name, on July 10, 2020. Star paid Hines the retainer of $1,200. Hines provided legal services by filing documents to collect on the judgments but made no court appearances on Star's behalf.
>
> In telephone and email conversations on August 31, 2020, Star advised that he wished to pursue the matters on his own and would contact Hines if he needed further assistance. Nonetheless, Star continued to submit inquiries and requests for information and documents and Hines's firm continued to respond. After applying the retainer fee to Star's bill for legal services rendered between the retention and September 25, 2020, Hines's firm invoiced Star $741 for the balance he owed.
>
> Star sued Hines for repayment of the $1,200 retainer, alleging that she had breached the engagement agreement by not providing him with legal services. Hines counterclaimed, seeking $741 in unpaid legal fees. At trial in general district court on March 4, 2021, the court found that Star signed the engagement letter and fee

---

[1] The Court will reference the circuit court records as follows: "CCT at ___." The circuit court records contain the criminal (CCT 3–357, 521–903) and habeas records (CCT at 358–520) in one file.

arrangement with DocuSign and, thus, agreed to the terms for retention and payment of fees. The court entered judgment for Hines in the amount of $741 and dismissed Star's warrant in debt. Star did not perfect an appeal from the general district court judgment to the circuit court.

On March 7, 2021, Star called the Alexandria police. Star said he had hired Hines's law firm to represent him to collect unpaid judgments and that, at trial in a dispute over legal fees, Hines had presented an engagement letter with an electronic signature that he did not sign. Star claimed that he had never seen the document before it was presented at trial. In addition, Star charged that "somebody in the law firm had signed it." At the police officer's request, Star emailed him the document in question.

The police contacted Hines regarding an investigation of an allegedly forged document. Hines provided the police with the engagement letter and fee arrangement signed by Star using DocuSign. Hines also obtained a "Certificate of Completion" from DocuSign indicating that the engagement letter had been signed properly using Star's email on July 10, 2020.

The police went to Star's home on March 11, 2021, and questioned him about the forgery allegation. When asked, Star said he did not use email to provide his electronic signature although he did have a laptop computer. The police then charged Star with making a false report to the police.

Star filed a civil complaint in circuit court against Hines alleging that she "forged" his signature on the engagement letter and fee agreement. The circuit court dismissed Star's claim by order entered June 17, 2021. The dismissal order stated that the finding that the engagement agreement was "valid and enforceable was essential to the General District Court's judgment dismissing Star's claim and granting Hines's counter–claim." The dismissal order further stated that "Star's claim that Hines forged his signature on the agreement is precluded by the doctrine of collateral estoppel . . . ." The circuit court found that the general district court's judgment was final and valid against Star and that he had failed to perfect an appeal of the judgment. The circuit court also found that Star filed the complaint "without just cause in violation of Va. Code § 8.01–271.1." The circuit court thus "order[ed] an injunction preventing Michael Star from filing any future claims" in that court against Hines relating to the retention agreement or any aspect of Hines's representation of him.

Testifying at his trial for making a false report to the police, Star admitted that he hired Hines to represent him for debt collection work and that he paid the $1,200 retainer. Star said that after contacting the police, he provided them with a copy of the engagement letter with his "wet" signature, claiming that he signed it while at Hines's office on July 10, 2020. He also gave the police a copy of the engagement letter with the DocuSign signature and said he did not recall seeing it before the trial in general district court. Star testified that, when he contacted the police, his understanding was that a person signing the name of another to a document without permission was forgery. Star claimed that he contacted the police thinking it was "a proper civil duty," not that he was making a false police report. He said that

3

> when he called the police, he "simply wanted clarification as to whether or not this DocuSign agreement was signed by [him]." The circuit court rejected Star's explanation that he did not intend to make a false report of a crime to the police and found him guilty.
>
> At sentencing, Hines testified that Star had a long, established history of filing frivolous lawsuits. She noted that the circuit court had sanctioned Star by ordering him not to file lawsuits against her or her law firm. Hines stated that Star had paid $700 toward the outstanding judgment but had failed to pay the additional $46 that he owed to satisfy her judgment against him with interest.
>
> The circuit court noted Star's long history of abusing the judicial system, thus inconveniencing other people and the courts. The circuit court sentenced Star to 12 months in jail, with all but 90 days suspended, probation for 6 months, and good behavior for 12 months after his release from confinement. In its pronouncement of sentence, the circuit court stated that Star's suspended sentence was conditioned upon his satisfaction of the judgment rendered against him and in favor of Hines; the circuit court further prohibited him from filing lawsuits against Hines, her staff, or anyone in the city of Alexandria without prior permission from the court. The circuit court's sentencing order, however, did not contain the condition that Star satisfy the outstanding judgment.

*Star v. Commonwealth*, No. 1537–22–4, 2023 Va. App. LEXIS 634, *1–7 (Va. Ct. App. Sept. 19, 2023) (footnote omitted). Petitioner did not appeal to the Supreme Court of Virgnia. ECF 1 ¶ 9(g).

On January 10, 2023, Petitioner filed a habeas petition in the Circuit Court for the City of Alexandria, alleging ineffective assistance of counsel. Specifically, counsel was ineffective because counsel failed to

1) seek a jury trial and failed to seek a hearing to withdraw petitioner's waiver of a jury trial when no plea agreement was reached;
2) introduce evidence of petitioner's mental health history (bipolar disorder);
3) represent petitioner fully through the process of trial and subsequent appeal.

(CCT at 368–69). The circuit court dismissed the petition on March 22, 2023, because Petitioner had failed "to allege sufficient facts to support [his] claims of ineffective assistance of counsel." (CCT at 418). Petitioner filed a notice of appeal on March 31, 2023, (CCT at 433), and a motion for reconsideration of the dismissal of his petition on April 17, 2023. (CCT at 445–50). The motion for reconsideration was denied on April 19, 2023. (CCT at 483). On January 3, 2024, the Supreme Court of Virginia returned the record to the circuit court because no petition for appeal had been

4

filed. (CCT at 520); *see* Va. S. Ct. Rule 5:17(a)(1) ("a petition for appeal must be filed with the clerk of this Court, as provided for in Rule 5:1B, . . . in an appeal direct from a trial court, not more than 90 days after entry of the order appealed from").

On July 18, 2023, Petitioner filed a second habeas petition in the Supreme Court of Virginia, in which he alleged that

> he was denied the effective assistance of counsel because counsel failed to seek a jury trial and failed to seek a hearing to withdraw petitioner's waiver of a jury trial, failed to introduce evidence of petitioner's mental health history, and failed to represent petitioner fully through the process of trial and subsequent appeal.

(VSCT at 435).[2] On November 13, 2023, the Supreme Court of Virginia held that his claims were barred.

> To the extent petitioner raises the same claims raised and decided in circuit court, they are barred by Code § 8.01-663 (no writ shall be granted based on any allegation previously resolved against the petitioner). To the extent petitioner raises different claims in this petition from the claims he raised in circuit court, they are barred by Code § 8.01-654(B)(2) (no writ shall be granted based on the allegation of facts of which petitioner had knowledge at the time of filing his previous habeas petition).

(VSCT at 435–36).

## II. Federal Petition[3]

Petitioner timely filed his § 2254 federal habeas petition on December 4, 2023, in which he raises three ineffective assistance of counsel claims. *See* ECF 1-3 at 13. He alleges he was denied the effective assistance of counsel because counsel failed to

1) seek a jury trial and failed to seek a hearing to withdraw petitioner's waiver of a jury trial;
2) introduce evidence of petitioner's mental health history;

---

[2] The Court references the Supreme Court of Virginia habeas court records as follows: "VSCT at ___."

[3] The circuit court record of the first habeas proceeding was in the Supreme Court of Virginia at the time Petitioner filed his second habeas petition in the Supreme Court of Virginia. The circuit court record was not returned to the circuit court until after the second habeas petition was dismissed..

3) represent petitioner fully through the process of trial and subsequent appeal.

ECF 1-3 at 13.

### III. Custody

Petitioner filed his federal petition on December 4, 2023. ECF 1 at 15. Respondent argues this matter should be dismissed because Petitioner did not file his habeas until after custody, for federal habeas purposes, had lapsed. The "in custody" requirement for federal habeas jurisdiction is satisfied if Petitioner was "in custody" at the time he filed his § 2254 petition, regardless of subsequent events. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); 28 U.S.C. §2254(a). Courts have liberally construed the term "in custody" for purposes of § 2254 to include not only physical detention in a prison or jail, but also including other "restraints on [Petitioner's] liberty [that are] not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963).[4] A person subject to a suspended sentence of imprisonment remains in custody for the purposes of § 2254 so long as he may be reincarcerated if he violates the terms and conditions of his suspended sentence. *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968).

Virginia Code § 19.2-306(A) determines when a period of suspension begins and ends, and it identifies two periods of time in which a court may revoke a suspended sentence. *Hill v. Commonwealth*, 876 S.E.2d 173, 176 (Va. 2022). The statute provides "that in any case 'in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court" and that "the power of revocation can be exercised to address misconduct that 'occurred within either the period of probation or the period of suspension.'" *Id.* (citation omitted).

The period of suspension begins "immediately upon entry of the conviction order that

---

[4] The jurisdictional precondition of being "in custody," requires an individual be subjected to some form of condition "which significantly confine[s] and restrain[s] his freedom." *Jones*, 371 U.S. at 243.

suspends the sentence." *Carbaugh v. Commonwealth*, 449 S.E.2d 264, 268 (Va. Ct. App. 1994) (citation omitted). The judgment order was entered on September 27, 2022; twelve months from that date is September 27, 2023. "It is apodictic . . . that if the sentencing judge suspends a portion of a sentence and prescribes a period of suspension, once that period of suspension expires the defendant is no longer subject to having the suspension revoked." *Id.* Using the September 27, 2023 date, Respondent correctly argues that Petitioner is no longer "in custody," and the Court lacks jurisdiction to consider Petitioner's 2254 petition.

The judgment order, however, also includes the following: "[t]he defendant shall be of good behavior for twelve months from the defendant's release from confinement" and also that Petitioner was "placed on probation to commence on his release from incarceration, under the supervision of a Probation Officer for 6 months or unless sooner released by the court." (CCT at 845, 846). Petitioner had an active sentence of ninety days in jail. The criminal records and the records Petitioner filed in support of his second state habeas proceeding indicate that Petitioner was released on October 7, 2022.[5] (CCT at 866; VSCT at 69, 70). His period of probation ended on Friday, April 7, 2023, six months after his release. Any potential period of possible revocation for the "good behavior" provision would end on Tuesday, October 10, 2023, twelve months after his release from confinement.[6] Petitioner filed his § 2254 petition on December 4, 2023, which was more than one month after he could have been subject to any possible revocation of the remaining portion of his suspended sentence. Hence, the Court is without jurisdiction to consider his petition.

---

[5] The September 29, 2022 medical record Petitioner submitted in the second state habeas proceeding indicates that he was anxious due to his "upcoming release on 10/7/22." (VSCT at 70). The October 19, 2022 medical records indicate that Petitioner "was released to the community on 10/07/2022." *Id.* at 69). His counsel in the circuit court filed several post–trial motions. Thereafter, counsel filed a motion to withdraw the post–trial motions at Petitioner's request because Petitioner was "scheduled to be released on or about October 7, 2022." (CCT at 866).

[6] To determine the relevant period, twelve months after his release would be Saturday, October 7, 2023, and Monday, October 9, 2023, was a federal holiday.

### IV.     Exhaustion and Default

Even if the Court had jurisdiction over his § 2254 petition, the three ineffective assistance of counsel claims Petitioner has raised are each defaulted. Although Petitioner filed his first state petition in a timely manner he failed to properly perfect his appeal of the circuit court's dismissal. The second petition did not result in a ruling on the merits of any of the three claims presented because of a different default.

**A. Exhaustion**

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). In order to meet the exhaustion requirement, a petitioner "must have presented to the state court 'both the operative facts and the controlling legal principles.'" *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). A petitioner must present his federal claims to the appropriate state court in the manner required by the state court, to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). A state prisoner does not "fairly present" a claim for exhaustion purposes when the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. *See, e.g., Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Kasi*, 300 F.3d at 501-02. The petitioner bears the burden of proving exhaustion. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the

8

state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). Such claims are deemed to be simultaneously exhausted and defaulted. *Id.*

### B. Petitioner's Defaults

Petitioner's missteps in state habeas have resulted in all of his claims being defaulted for purposes of federal habeas review. The only time Petitioner presented the ineffective assistance of counsel claims to the Supreme Court of Virginia was in his second state petition, but his default in appealing the dismissal of his first state habeas petition precluded the Supreme Court of Virginia from reviewing the merits of Petitioner's claims in his second state habeas petition. The Supreme Court of Virginia found Petitioner's claims, to the extent they were raised in the first state habeas petition, were barred by Virginia Code § 8.01–663; and, to the extent Petitioner was attempting to raise any additional claims in the second state habeas petition, the court held those claims were barred under Virginia Code § 8.01–654(B)(2). (VSCT at 435–36).[7]

Virginia Code § 8.01–663 provides that a "judgment entered of record shall be conclusive, unless the same be reversed, except that the petitioner shall not be precluded from bringing the same matter in question in an action for false imprisonment."[8] The Supreme Court of Virginia has construed § 8.01–663 to mean that habeas judgments are conclusive and that issues resolved in a previous proceeding (such as an earlier habeas or on direct review) cannot be relitigated in a subsequent habeas petition absent a change in circumstances. *Hawks v. Cox*, 175 S.E.2d 271, 274 (Va. 1970).[9] *See also Turner v. Williams*, 35 F.3d 872, 890 (4th Cir. 1994) ("*Hawks*, however, is

---

[7] Virginia Code § 8.01–654(B)(2), Virginia's successive writ statute, is also procedural default the precludes federal review. *See, e.g., Pope v. Netherland*, 113 F.3d 1364, 1372 (4th Cir. 1997) (Virginia Code § 8.01-654(B)(2) is independent and adequate state law default). In reviewing the record, however, it appears that petitioner has raised the same three ineffective assistance of counsel claims in both of his state petitions, as well as his § 2254 petition. The Court will, therefore, analyze the claims under the Code § 8.01–663 bar that precluded a merits review in state court.

[8] Section 8.01–663 is in the portion of the Virginia Code that contains the statutes related to state habeas proceedings. Va. Code Ann. §§ 8.01–654 through 668 (Article 3. Habeas Corpus. §§ §§ 8.01–654 through 668).

[9] *Hawks* interpreted the former version of Code § 8.01–663 (then § 8–605 Code of Virginia), but while the statute citation has changed the text of the statute has not. *See Bland v. Johnson*, 495 F. Supp. 735, 736 (E.D. Va. 1980)

9

not a true procedural default rule; rather, it is more in the nature of a collateral estoppel rule. Hawks cannot prevent federal habeas review of federal constitutional claims properly raised on direct appeal."). Application of § 8.01-663, like the application of *Hawks*, is not a merits decision. Instead it is a recognition that the claims before the court were resolved in a previous proceeding.

The claims Petitioner raised in his circuit court habeas are, therefore, simultaneously exhausted and defaulted because he failed to perfect his petition for appeal to the Supreme Court of Virginia. *See Whitley v. Bair*, 802 F.2d 1487, 1500 (4th Cir. 1986) ("failure to appeal claims disposed of by state habeas trial court constitutes a procedural bar to further federal review of such claims"); *see also Wise v. Williams*, 982 F.2d 142, 146 (4th Cir. 1992) (affirming district court's conclusion that state habeas claim was procedurally defaulted due to prisoner's failure to timely file his notice of appeal).[10] Because he did not perfect his appeal to the Supreme Court of Virginia, the claims in the first state habeas have not been presented in a procedural context that allowed the merits to be considered.

The second state petition for a writ of habeas corpus, which Petitioner filed in the Supreme Court of Virginia, also failed to "fairly present[]" his claims to the Supreme Court of Virginia for purposes of exhaustion because the claims in the second state habeas were raised in "a procedural context in which its *merits* [would] not be considered." *Castille*, 489 U.S. at 351 (emphasis added). To the extent Petitioner did not previously raise his claim involving the allegation of ineffective

---

(discussing *Hawks* and noting that *Hawks* interpreted "§ 8–605 Code of Virginia" which had been recodified as § 8.01–663 and noting the statute provided that "a Virginia court may dismiss a petition for a writ of habeas corpus summarily if it determines that it is repetitious.").

[10] *See also O'Dell v. Netherland*, 95 F.3d 1214, 1244 (4th Cir. 1996) (finding that Virginia Supreme Court's dismissal of appeal from denial of writ of habeas corpus as untimely pursuant to Rule 5:17(a)(1) was independent and adequate state law ground barring federal habeas review); *Spencer v. Murray*, 5 F.3d 758, 761 (4th Cir. 1993) (Rule 5:17(a)(1) is an adequate and independent state ground that bars federal habeas review of claims raised by a federal petition "in his state habeas appeal ... unless those claims were otherwise exhausted by being raised on direct appeal.").

assistance of appellate counsel, the claim was barred from review as successive under Virginia Code § 8.01–654(B)(2).[11]

### C. Cause and Prejudice

Federal courts may not review defaulted claims absent a showing of cause and prejudice, or a fundamental miscarriage of justice, such as actual innocence. *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim.") (quoting *Coleman v. Thompson*, 501 U. S. 722, 750 (1991)). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman*, 501 U.S. at 753-54; *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995). Here, Petitioner does not allege cause to excuse his defaults, and none is apparent from the record. All of Petitioner's claims are therefore barred from federal review.

### IV.     Conclusion

For the foregoing reasons, the motion to dismiss the petition (ECF 10) must be granted and the petition must be dismissed with prejudice. An appropriate Order shall issue.[12]

---

[11] Under § 8.01-654(B)(2), "a petitioner is barred from raising any claim in a successive petition if the facts as to that claim were either known or available to petitioner at the time of his original petition." *Hoke v. Netherland*, 92 F.3d 1350, 1354 n.1 (4th Cir. 1996). The Fourth Circuit has observed that it has "held on numerous occasions that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state–law ground for decision." *Mackall v. Angelone*, 131 F.3d 442, 446 (4th Cir. 1997) (en banc).

[12] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.

                                                          /s/
                                          Michael S. Nachmanoff
                                          United States District Judge

August 30, 2024
Alexandria, Virginia